**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

KELEDY KENKEL and ADINA RINGLER, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

CHURCH & DWIGHT CO., INC.

Defendant.

**FIRST AMENDED CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

Case No. 1: 25-cv-6926-AMD-PK

Plaintiffs Keledy Kenkel and Adina Ringler, on behalf of themselves and all others similarly situated, bring this class action suit for damages and equitable relief against Church & Dwight Co., Inc. ("Church & Dwight" or "Defendant"). Plaintiffs allege the following based upon personal information as to allegations regarding themselves, and the investigation of their counsel, and on information and belief as to all other allegations:

## NATURE OF THE ACTION

1. This case is about Church & Dwight's "L'il Critters Fiber Digestive Support" gummy bears ("Gummies"). The Gummies are now, and have always been, intended for young children.

2. Church & Dwight markets the Gummies as having "as much" or "more" fiber content than various fruits or vegetables, such as asparagus or prunes. It also claims, in large print on the front of many bottles, that the Gummies contain "Fiber" for "Digestive Support."

3. These claims are false and misleading to a reasonable consumer for a very simple reason: most fruits and vegetables contain soluble *and* insoluble fiber; the Gummies do not.

4. On the Gummies' bottle, and in online marketing, Church & Dwight has explicitly compared the fiber content of the Gummies to the fiber content of prunes and asparagus.

5. Specifically, on the bottle and online, Church & Dwight claims that:

- "2 Gummies Contain as Much Fiber as 4 prunes";
- "Each serving provides as much fiber as 5 prunes"; and
- One serving contains "more fiber than 1 cup of asparagus."

6. In addition to these comparative claims, Church & Dwight stresses, on the bottle and in online marketing, that the Gummies contain "Fiber" for "Digestive Support."

7. These statements are false and intentionally misleading. Simply put, these claims lead consumers to believe that the Gummies provide digestive benefits that they cannot provide.

8. The fiber content of the Gummies—which contain only soluble fiber—cannot be equated to the fiber content of prunes, asparagus or other fruits and vegetables. "[M]ost high-fiber

plant foods contain both soluble and insoluble fiber."[1] Insoluble fiber helps with bowel movements,[2] "help[s] food and waste pass through the gut more easily,"[3] and is necessary to "exercise" the bowels to prevent "eventual constipation."[4]

9. While soluble fiber certainly has its benefits, soluble fiber alone cannot reproduce these effects. Insoluble fiber, as Church & Dwight is aware, is especially essential for children.[5] Thus, the digestive benefits of insoluble fiber are of special concern to the parents that make up Church & Dwight's target market for their Gummies.

10. Comparing the Gummies to foods high in *both* soluble and insoluble fiber and marketing them for "digestive support" leads consumers to believe that their children can get the same digestive support from the Gummies as they would from eating real fruits or vegetables. To quote Church & Dwight, the Gummies are "a bite of broccoli without a fight." But Church & Dwight holds out a false hope to parents everywhere. Without insoluble fiber, the Gummies simply cannot provide similar, let alone equivalent, digestive health effects to those provided by real fruits or vegetables.

11. Church & Dwight's misrepresentations and omissions caused consumers to pay a price premium for the Gummies. The Gummies are worth far less than they were sold for. They do not produce the "digestive support" or health effects consumers expect because they do not

---

[1] https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/fiber/art-20043983#:~:text=Soluble%20fiber%20is%20found%20in,and%20adds%20bulk%20to%20stool.

[2] https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/fiber/art-20043983#:~:text=Soluble%20fiber%20is%20found%20in,and%20adds%20bulk%20to%20stool.

[3] https://www.nih.gov/news-events/nih-research-matters/health-benefits-dietary-fibers-vary

[4] https://bastyr.edu/about/news/do-we-really-need-insoluble-fiber

[5] https://www.beginhealth.com/blogs/learn/what-is-insoluble-fiber-for-kids-benefits-and-importance-explained?

contain "as much," let alone "more," fiber content than real fruits or vegetables. Plaintiffs and Class members suffered real economic harm by purchasing the Gummies. Church & Dwight's omissions and misrepresentations deprived Plaintiffs and other consumers of the ability to make informed decisions and induced them to pay a price premium for the Gummies.

12. Accordingly, Plaintiffs, on behalf of themselves an all others similarly situated bring claims against Church & Dwight under New York General Business Law ("GBL") §§ 349 & 350, under California's Consumer Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL"), under other states' consumer protection laws, and a claim for unjust enrichment.

**THE PARTIES**

13. Plaintiff Keledy Kenkel is a resident of Brooklyn, New York. She has purchased Church & Dwight's Gummies at various retailers and on Amazon numerous times. She made each purchase specifically because she saw Church & Dwight's claim that their Gummies contained as much fiber as four prunes and claims that the Gummies included "Fiber" for "Digestive Support." Had Plaintiff Kenkel known the Gummies did not have fiber content equivalent to four prunes or did not provide similar digestive support benefits, she would not have purchased them or would have paid less for them.

14. Plaintiff Adina Ringler is a resident of Northridge, California. She has purchased Church & Dwight's Gummies on Amazon multiple times. She made each purchase specifically because she saw the claim that the Gummies contained as much fiber as four prunes and claims that the Gummies included "Fiber" for "Digestive Support." Had Plaintiff Ringler known the Gummies did not contain fiber equivalent to four prunes or did not provide similar digestive support benefits, she would not have purchased them or would have paid less for them.

15. Defendant Church & Dwight Co., Inc. is incorporated in Delaware and

headquartered in Ewing, New Jersey. Defendant acquired L'il Critters in 2012.[6]

## JURISDICTION AND VENUE

16. This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2), because the aggregate amount in controversy exceeds $5 million, exclusive of interests and costs; more than 100 class members are involved; and many members of the proposed Classes are citizens of different states than the Church & Dwight.

17. This Court has personal jurisdiction over Church & Dwight because it directed its activities to this District, committed the tortious acts alleged herein in New York, regularly conducts business in this District, and has extensive contacts with this forum.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District and Church & Dwight transacts substantial business in this District.

## FACTUAL ALLEGATIONS

### A. Church & Dwight Markets to a Specific Demographic: Parents Concerned with A Child's Low Fiber Diet.

19. Parents worry about what their kids eat. When parents specifically worry about fiber intake, that concern often revolves around an uncomfortable subject: constipation.

20. Constipation is a common problem in young children today.[7] One in every twenty children's visits to the doctor is due to constipation.[8] This condition can be caused by a variety of factors, but notable among them is a low-fiber diet.[9] That said, regardless of the cause, medical

---

[6] https://www.lilcritters.com/mission

[7] https://www.mayoclinic.org/diseases-conditions/constipation-in-children/symptoms-causes/syc-20354242

[8] https://www.healthychildren.org/English/health-issues/conditions/abdominal/Pages/constipation.aspx

[9] https://www.mayoclinic.org/diseases-conditions/constipation-in-children/symptoms-causes/syc-20354242

professionals agree on the solution to child constipation: add more fiber to your children's diet.

21. Johns Hopkins Medicine advises that "making changes in your child's diet will help constipation" and urges parents to help their children "eat more fiber by . . . adding more fruits and vegetables."[10] The Mayo Clinic also urges parents to serve children more high-fiber foods, such as fruits and vegetables because "[a] diet rich in fiber can help your child's body form soft, bulky stool."[11] Children's National Hospital in Washington D.C. runs a Bowel Management Program for children who need intensive care due to constipation. As a part of this program, children "[w]ork[] with nutritionists who help create recipes and diet plans rich in fiber."[12]

22. As the statement by the Mayo Clinic makes particularly clear, *insoluble* fiber plays a crucial role in relieving constipation. It is insoluble, not soluble, fiber that helps the body form "bulky stool."[13] Accordingly, there is consensus as to the solution to constipation in children: feed children foods rich in fiber, especially those rich in insoluble fiber. But, while the solution to child constipation is widely accepted, children do not always make it easy.

23. Many parents have children who are so-called "picky eaters." Up to 50% of children fit this description, a label used to describe kids who will not eat vegetables, only eat certain foods, or have aversions to trying new foods.[14] For parents of picky eaters, giving their children more fiber can seem to be an impossible struggle.

---

[10] https://www.hopkinsmedicine.org/health/conditions-and-diseases/constipation-in-children
[11] https://www.mayoclinic.org/diseases-conditions/constipation-in-children/symptoms-causes/syc-20354242
[12] https://www.childrensnational.org/get-care/health-library/chronic-constipation
[13] https://www.mayoclinic.org/diseases-conditions/constipation-in-children/symptoms-causes/syc-20354242. *See* https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/fiber/art-20043983 ("Insoluble fiber . . . adds bulk to stool."); *see also* https://www.nih.gov/news-events/nih-research-matters/health-benefits-dietary-fibers-vary ("Insoluble fibers . . . act as bulk that can help food and waste pass through the gut more easily.")
[14] https://www.nationwidechildrens.org/family-resources-education/700childrens/2018/06/picky-eating

24. Seeing an opportunity, Church & Dwight offers its Gummies as the easy solution.

**B. Church & Dwight Falsely Represents Its Gummies as the Solution to Picky Eating.**

25. Church & Dwight is aware of the importance of insoluble fiber in a child's diet. Church & Dwight is also aware of the picky-eater problem faced by many parents. With both facts in mind, Church & Dwight intentionally frames its Gummies as the easy way for parents to feed their children more fiber. Indeed, parents no longer have to struggle to convince their children to eat their vegetables; the Gummies are "a bite of broccoli without a fight."

26. This slogan—prominently displayed on the Gummies' product pages for retailers such as Amazon and Walmart—clearly references the picky-eater problem and offers the Gummies—one of Church & Dwight's many offerings under the L'il Critters label—as a substitute for real fruits and vegetables and, thus, as an alternative source of "fiber" for children.




27. Similar slogans appear on the Amazon, Walmart, and Kroger product pages, advertising that the Gummies "make[] getting essential fiber for kids a fun part of the day!" This language shows Church & Dwight's awareness that many parents struggle to convince their

children to eat enough fiber.

28. Unfortunately for struggling parents, Church & Dwight can only offer an easy solution to the picky-eater problem by making false and misleading claims. Church & Dwight offers little more than a false hope to struggling parents because it claims that its Gummies provide digestive support and health benefits that soluble fiber alone cannot provide.

**C. Soluble and Insoluble Fiber Have Contrasting Benefits and Effects.**

29. As mentioned above, the Gummies contain only a single type of fiber—soluble fiber—while fruits and vegetables contain two types of fiber—both soluble and insoluble. Understanding the difference between the fiber types is crucial to understanding the deceptive nature of Church & Dwight's advertising and marketing.

30. Fiber is an essential nutrient commonly found in many fruits and vegetables. Unlike protein, fat, and sugars, the body cannot fully break fiber down. This allows it to pass through the body and provide a person with various benefits.

31. There are two types of fiber: soluble and insoluble. Although proportions vary based on the food, "most high-fiber plant foods contain *both* soluble and insoluble fiber."[15] Soluble fiber helps to slow digestion, decrease cholesterol, and lower blood sugar. Foods such as oats, apples, bananas, and avocados are high in soluble fiber.[16]

32. Insoluble fiber, on the other hand, facilitates bowel movements, "help[s] food and waste pass through the gut more easily,"[17] and helps to prevent "eventual constipation."[18] It also

---

[15] https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/fiber/art-20043983#:~:text=Soluble%20fiber%20is%20found%20in,and%20adds%20bulk%20to%20stool.
[16] *Id.*
[17] https://www.nih.gov/news-events/nih-research-matters/health-benefits-dietary-fibers-vary
[18] https://bastyr.edu/about/news/do-we-really-need-insoluble-fiber

helps to increase the bulk of stool.[19]

33. Foods such as cauliflower, green beans, and potatoes are high in insoluble fiber.[20] This form of fiber is especially essential for children but, as hinted at above, is often found in foods, like cauliflower, that picky eaters refuse to eat. Nonetheless, insoluble fiber "plays a pivotal role in our kid's digestive health," "support[s] gut health and regularity," and "can also contribute to overall wellness and helps kids build a better foundation for healthier diet habits."[21]

34. Soluble and insoluble fiber provide distinct health benefits and effects. *Together* they define the fiber content of various fruits and vegetables. The medical establishment has, repeatedly, stressed the importance of consuming both kinds of fiber to obtain their complementary benefits[22] and studies show that ingesting too much of one kind of fiber can be harmful. For example, soluble fiber—the only type of fiber in the Gummies—can cause gas and discomfort if taken in excess.[23] Recent studies have even linked surpluses of soluble fiber to liver cancer.[24]

35. In other words, both soluble and insoluble fiber are essential to maintaining a healthy digestive system[25] but the effects of one fiber type cannot be equated to the other.

**D. Church & Dwight Falsely and Misleadingly Markets of the Fiber Gummies.**

36. Church & Dwight sells a variety of supplements for children. They are all marketed as premium products from a "pediatrician trusted brand" that prioritizes "high-quality standards

---

[19] https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/fiber/art-20043983#:~:text=Soluble%20fiber%20is%20found%20in,and%20adds%20bulk%20to%20stool.

[20] https://www.mayoclinic.org/healthy-lifestyle/nutrition-and-healthy-eating/in-depth/fiber/art-20043983#:~:text=Soluble%20fiber%20is%20found%20in,and%20adds%20bulk%20to%20stool.

[21] https://www.beginhealth.com/blogs/learn/what-is-insoluble-fiber-for-kids-benefits-and-importance-explained?

[22] https://www.healthline.com/health/soluble-vs-insoluble-fiber#sources-of-fiber

[23] https://www.health.com/how-to-boost-fiber-intake-without-bloating-11785723

[24] https://pmc.ncbi.nlm.nih.gov/articles/PMC9268622/

[25] https://www.mountsinai.org/health-library/special-topic/soluble-vs-insoluble-fiber

and thorough testing."[26] Among those offerings, Church & Dwight sells a supplement previously called the "Fiber Gummy Bear Supplement" (defined above as the "Gummies").

37. Church & Dwight has sold these Gummies online and in-store at various retailers, including Walmart, Kroger, BJ's, Sam's Club, Walgreens, Target, and Amazon. On their bottles, and in online marketing, Church & Dwight explicitly compares the Gummies' fiber content to that of various fruits and vegetables. For example, in one ad Church & Dwight represents that one serving of the Gummies has "as much fiber as 4 prunes." Church & Dwight also prominently states on every bottle that the Gummies contain "Fiber" for "Digestive Support."

38. Each of these comparisons and "digestive support" claims are inherently false.

39. Under applicable federal regulations, Church & Dwight can lawfully compare the fiber content of its Gummies to the fiber content of another food but *only if* the Gummies in fact provide an "equivalent" source of fiber on a per serving basis:

> The phrases "contains the same amount of [nutrient] as a [food]" and "as much [nutrient] as a [food]" may be used on the label or in the labeling of foods, provided that the amount of the nutrient in the reference food is enough to qualify that food as a "good source" of that nutrient, and the labeled food, on a per serving basis, is an equivalent, good source of that nutrient (e.g., "as much fiber as an apple," "Contains the same amount of Vitamin C as an 8 oz glass of orange juice.").
>
> 21 C.F.R. § 101.65(c) (brackets in original).

40. Accordingly, federal law affirmatively prohibits Church & Dwight from comparing the fiber content of its Gummies to any fruit or vegetable when their fiber content is not equivalent.

41. As explained above, soluble and insoluble fiber have distinct health benefits and effects on digestion. Unlike fruits and vegetables, which contain both fiber types, the Gummies only contain soluble fiber. Accordingly, the Gummies do not provide an "equivalent" source of

---

[26] https://www.lilcritters.com/mission

the compared nutrient because they lack insoluble fiber and the only fiber-type they do contain—that is, soluble fiber—cannot provide equivalent digestive support or health effects.

**1. Church & Dwight's False and Misleading Prune Claims**

42. On the front of the Gummies' bottle, Church & Dwight claimed, "2 Gummies Contain as Much Fiber a 4 Prunes." By placing this claim front and center on the product's packaging, Church & Dwight made it a key marketing point of the product; it is impossible to miss.

43. For example, these are the bottles in Plaintiffs' possession at the beginning of this lawsuit:




Plaintiff Kenkel's Bottle




Plaintiff Ringler's Bottle

44. This same claim comparing the Gummies' fiber content to prunes is also ubiquitous on the Gummies' online product pages. For instance, the Gummies' product pages on Amazon, Walmart, and Kroger all include a graphic stating that "One Serving Has 3g Prebiotic Fiber as much as 4 Prunes!":



45. The same claim also appears in the "About This Item" section on the Amazon (see below), Walmart, and Kroger websites and in the product page on Walgreen's website, which says, "Each serving provides as much fiber as 5 prunes."

walgreens.com/store/c/l'il-critters-fiber-gummy-bears-berry/ID=prod6171262-product



L'il Critters
Fiber Gummy Bears Berry, 90.0 ea

**Description**

- Good source of fiber
- Prebiotic supports digestive health
- Natural flavors & sugar free

Dietary Supplement
**Supports Digestion***
3g of Fiber per Serving

- Good Source of Fiber
- Prebiotic Supports Digestion*
- Sugar Free
- Gluten Free
- Best Tasting
- Naturally Sourced Colors & Flavors

Each serving provides as much fiber as 5 prunes.
Naturally sourced berry, lemon & strawberry flavors.
Contains no gluten (wheat), milk, eggs, peanuts, shellfish or soy.

Description of the Gummies on Walgreens' Website

## About this item

- Each serving of Children's supplement contains 3 grams of Fiber
- Gummy bear fiber supplements come in delicious berry and lemon flavors
- Contains no high-fructose corn syrup, no synthetic (FD&C) dyes, no dairy and no gluten
- Daily serving size for L'il Critters Fiber supplement is 2 gummies a day for ages 2 and up
- L'il Critters Gummy Fiber Daily Supplements, from the makers of Vitafusion, Gummy Vitamin Expert, makes getting essential fiber for kids a fun part of the day!
- Supports digestive health
- 2 fiber gummies contain as much fiber as 4 prunes

Amazon "About this item" Section

46. The ubiquity of claims comparing the Gummies' fiber content to prunes shows how central this supposed equivalence is to Church & Dwight's advertising. It is also false and misleading.

47. Like most high fiber fruits and vegetables, prunes contain both soluble and insoluble fiber. Prunes actually contain *more* insoluble fiber (1.8 grams) than soluble fiber (1.3 grams), for a total of 3.1 grams.[27] But both types of fiber are integral to the makeup of prunes, and consumers only reap the full digestive benefits of prunes when they ingest *both* fiber types.

48. According to the Supplement Facts label, these Gummies include only three grams of dietary fiber. Soluble fiber makes up all three of these grams[28]:




49. Therefore, the fiber content of prunes—and most other high fiber fruits and

[27] https://www.northottawawellnessfoundation.org/wp-content/uploads/2017/11/NOWF-Fiber-Content-of-Foods.pdf
[28] https://www.lilcritters.com/products/lil-critters-fiber-gummy-bears

vegetables—is not equivalent to the fiber content of the Gummies. This renders any claims on the bottle and product pages that compare the Gummies to prunes false and misleading.

### 2. Church & Dwight's False and Misleading Asparagus Claims

50. Church & Dwight has also likened the fiber content of its Gummies to that of asparagus.

51. On the product pages of Walmart, Sam's Club, and BJ's, Church & Dwight claimed that one serving of Gummies contained "more fiber than in one cup of asparagus."[29] For example, below is the Gummies' "About this item" section from Walmart's website:



**About this item**

Product details

L'il Critters Fiber Gummy Bears is a great way to support your child's digestive system with 3 grams of fiber in every delicious gummy serving;[2] That's more fiber than in 1 cup of asparagus! L'il Critters Fiber Gummy Bears are also sugar free. Did you know? - One serving of L'il Critters Fiber Gummy Bears has as much fiber as four prunes. [2] These statements have not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure or prevent any disease. The ChefsBest®Excellence Award is awarded to brands that surpass quality standards established by independent professional chefs.

- By the makers of the #1 Kids Gummy Vitamin Brand
- No high fructose corn syrup
- No synthetic (FD&C) dyes
- Gluten-free
- Award Winning Taste

ⓘ **We aim to show you accurate product information.** Manufacturers, suppliers and others provide what you see here, and we have not verified it. See our disclaimer

52. As with the comparison to prunes, this comparison between the Gummies and asparagus is inaccurate and misleading because asparagus contains soluble and insoluble fiber.

53. One half cup of cooked asparagus contains 1.7 grams of soluble fiber and 1.1 grams

---

[29] After counsel's initial investigation into this case, these claims were removed from these retailers' websites. However, when initially researching this case, counsel maintained a record of all known fiber claims, which is what is included below.

of insoluble fiber.[30] Thus, one full cup of cooked asparagus has 3.4 grams of soluble fiber and 2.2 grams of insoluble fiber. This means that the total combined fiber content of cooked asparagus (5.6 grams) exceeds the total fiber content of the Gummies, which contain just three grams of soluble fiber and zero grams of insoluble fiber.

54. But the total number of grams is, in many ways, beside the point. The Gummies do not provide similar digestive support and other health benefits of eating asparagus because those benefits are only provided by ingesting soluble *and* insoluble fiber.

**3. Church & Dwight's False and Misleading Statements That The Gummies Contain "Fiber" for "Digestive Support"**

55. As depicted above, Church & Dwight announces on every bottle of L'il Critters that the Gummies provide "Fiber" for "Digestive Support." The phrase "Digestive Support" is spelled out in all caps, and the entire message is written in large font and, further, placed in a large circle with contrasting colors. It is impossible for consumers to miss this message.

56. Church & Dwight has even gone so far as to rename its Gummies from "Fiber Gummy Bear Supplements" to "L'il Critters Fiber Digestive Support," stressing how important the messaging about digestive support is to Church & Dwight's advertising campaign.

57. Digestive support claims are repeated off the bottle as well. On the product pages for the Gummies on Walmart, Target, Kroger and Amazon, ads announce that the Gummies offer "Kids' Digestive Support." And, in the "About This Item" section on those same pages, Church & Dwight says that the Gummies "support[] digestive health."[31]

58. The claim that the Gummies contain "Fiber" for "Digestive Support" is misleading.

---

[30] https://www.ncbi.nlm.nih.gov/books/NBK326737/table/lipids_lifestyle-changes-lipids-and-lipoproteins.T._7/

[31] *See* https://www.amazon.com/Lil-Critters-Fiber-Gummy-Bears/dp/B009VGEHFS (second photo in carousel).

The claim that the Gummies provide "Fiber" obscures the fact that Gummies entirely lack *insoluble* fiber—that is, they lack the fiber type consumers most associate with digestive support. Rather than truthfully disclose the fiber content of the Gummies on the front of the bottle, Church & Dwight obscures the difference between fiber types and leads consumers to believe that the Gummies can provide the "digestive support" consumers most associate with insoluble fiber.

59. Under federal law, Church & Dwight can claim that its Gummies provide certain digestive support *only if* it can substantiate "that such a statement is truthful and not misleading." 21 U.S.C. § 343(r)(6)(B). Thus, federal law affirmatively prohibits "misleading" claims.[32] *Id.*

### 4. A Summary of Some of Church & Dwight's False and Misleading Statements

60. The following lists Church & Dwight's false and misleading comparisons to prunes and asparagus and its false and misleading claims about "Digestive Support."

61. Prunes:

| Claim | Location |
|---|---|
| "2 Gummies Contain as Much Fiber a 4 Prunes" | • Bottle<br>• Amazon, Walmart, and Kroger's "About this item" section |
| "One Serving Has 3g Prebiotic Fiber as much as 4 Prunes!" | • Graphic on Amazon, Walmart, and Kroger Product Pages |
| "Each serving provides as much fiber as 5 prunes." | • Walgreens Website |

[32] Including the required disclaimer that its statements "have not been evaluated by the Food and Drug Administration," *see* 21 U.S.C. § 343(r)(6)(C), does not relieve Church & Dwight of the independent requirement that it make truthful, *non-misleading* disclosures. *Id.* § 343(r)(6)(B).

62. Asparagus:

| Claim | Location |
|---|---|
| "More fiber than in 1 cup of asparagus!" | • Online in Walmart, Sam's Club, and BJ's "About this item" section |

63. Digestive Support:

| Claim | Location |
|---|---|
| "Fiber DIGESTIVE SUPPORT" | • Bottle |
| "Kids' Digestive Support" | • Walmart, Target, Amazon, and Kroger Product Pages |
| "Supports digestive health" | • Walmart, Target, Kroger, and Amazon Product Pages |

## CLASS ACTION ALLEGATIONS

64. Plaintiff Kenkel and Plaintiff Ringler bring this action on behalf of themselves and on behalf of the following proposed Nationwide Class, initially defined as follows:

> All individuals in the United States who purchased the Gummies within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

65. Plaintiff Kenkel brings this action on behalf of herself and on behalf of the following proposed New York Class, initially defined as follows:

> All individuals in New York who purchased the Gummies within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

66. Plaintiff Ringler also brings this action on behalf of herself and on behalf of the following proposed California Class, initially defined as follows:

> All individuals in California who purchased the Gummies within the relevant limitations period, and/or such subclasses as the Court may deem appropriate.

67. Excluded from the proposed Classes are Church & Dwight, its parents, subsidiaries, affiliates, officers, and directors, and any entity in which Church & Dwight has a controlling interest.

68. Plaintiffs reserve the right to re-define any of the class definitions prior to class certification and after having the opportunity to conduct discovery.

69. The claims of all class members derive directly from a single course of conduct by Church & Dwight. Church & Dwight has engaged and continues to engage in uniform and standardized conduct toward the putative class members. Church & Dwight does not differentiate, in degree of care or candor, in its actions or inactions, or the content of its statements or omissions, among individual class members.

70. Certification of Plaintiffs' claims is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claim.

71. Accordingly, Plaintiffs bring this lawsuit as a class action on their own behalf and on behalf of all other business, entities, and individuals similarly situated pursuant under Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23.

72. Specifically, this action has been properly brought and may properly be maintained as a class action under Rule 23(a)(1-4), Rule 23(b)(1), (2), or (3), and/or Rule 23(c)(4) of the Federal Rules of Civil Procedure.

73. **Numerosity** (Fed. R. Civ. P. 23(a)(1)). The members of the proposed Classes are each so numerous that their individual joinder would be impracticable. While the exact number is not known at this time, it is generally ascertainable by appropriate discovery, and it is believed

each Class includes many tens of thousands of members. The precise number of class members, and their addresses, are unknown to Plaintiffs at this time but can be ascertained from Church & Dwight's records.

74. **Ascertainability.** The Classes are ascertainable because their members can be readily identified using business records, and other information kept by Church & Dwight in the usual course of business and within their control or Plaintiffs and the Classes themselves. Plaintiffs anticipate providing appropriate notice to the Classes to be approved by the Court after class certification, or pursuant to court order.

75. **Commonality and Predominance** (Fed. R. Civ. P. 23(a)(2); 23(b)(3)). Common questions of law and fact exist as to all class members. These questions predominate over the questions affecting only individual class members. The common legal and factual questions include, without limitation:

(a) Whether Church & Dwight engaged in the conduct alleged in this Complaint;

(b) Whether Church & Dwight violated the applicable statutes alleged herein;

(c) Whether Plaintiffs and the class members are injured and harmed directly by Church & Dwight's conduct;

(d) Whether Plaintiffs and the class members are entitled to damages due to Church & Dwight's conduct as alleged in this Complaint, and if so, in what amounts; and

(e) Whether Plaintiffs and the class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief as requested in this Complaint;

(f) Whether Plaintiffs and the Classes are entitled to actual, compensatory, nominal, statutory, enhanced, and/or punitive damages;

(g) Whether Plaintiffs and the Classes are entitled to injunctive, declaratory relief, or other equitable relief;

(h) Whether Plaintiffs and the Classes are entitled to civil penalties;

(i) Whether Plaintiffs and the Classes are entitled to reasonable attorneys' fees and costs.

76. **Typicality of Claims (Fed. R. Civ. P. 23(a)(3)).** The claims of Plaintiffs and the putative class members are based on the same legal theories and arise from the same unlawful and willful conduct of Church & Dwight, resulting in the same injury to Plaintiffs and the putative class members. Plaintiffs and all class members are similarly affected by Church & Dwight's wrongful conduct, were damaged in the same way, and seek the same relief. Plaintiffs' interests coincide with, and are not antagonistic to, those of the other class members. Plaintiffs have been damaged by the same wrongdoing set forth in this Complaint.

77. **Adequacy of Representation (Fed. R. Civ. P. 23(a)(4)).** Plaintiffs are adequate representatives of the Classes because their interests do not conflict with the interests of the class members, and he has retained counsel competent and experienced in complex class action, business competition, health care and consumer litigation. Plaintiffs and their counsel will fairly and adequately protect the interest of the class members.

78. **Superiority of a Class Action (Fed. R. Civ. P. 23(b)(3)).** A class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and class members. There is no special interest in class members individually controlling the prosecution of separate actions. The damages suffered by individual class members, while significant, are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Church & Dwight's conduct. Further, it would be virtually impossible for the class members individually to redress effectively the wrongs done to them. And, even if class members

themselves could afford such individual litigation; the court system could not, given the tens or even hundreds of thousands of cases that would need to be filed. Individualized litigation would also present a potential for inconsistent or contradictory judgments. Individualized litigation would increase the delay and expense to all parties and the court system, given the complex legal and factual issues involved. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

79. **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)).** In the alternative, this action may properly be maintained as a class action, because:

(a) the prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudication with respect to individual class members, which would establish incompatible standards of conduct for Church & Dwight; or

(b) the prosecution of separate actions by individual class members would create a risk of adjudications with respect to individual class members which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c) Church & Dwight has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Classes as a whole.

## FIRST CAUSE OF ACTION

**Violations of New York Gen. Bus. Law § 349**
**(On Behalf of Plaintiff Kenkel and the New York Class)**

80. Plaintiff Kenkel incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

81. NY GBL § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state."

82. NY GBL § 349 applies to Plaintiff Kenkel and the New York Class the State of New York has a strong interest in protecting its residents from false advertising and deceptive business practices by companies marketing consumer goods within the state.

83. Any person who has been injured by reason of any violation of NY GBL § 349 may bring an action in his or her own name to enjoin such unlawful acts or practices, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not exceeding three times the actual damages, in addition to one thousand dollars per violation, if the court finds that the Church & Dwight willfully or knowingly violated this section. The court may award reasonable attorneys' fees to prevailing Plaintiffs.

84. As alleged herein, Church & Dwight's advertisements and promotion of the Gummies are materially misleading and deceptive within the meaning of NY GBL § 349.

85. Church & Dwight's acts and practices deceived Plaintiff Kenkel and the class members. Plaintiff Kenkel and the class members reasonably relied on these representations and believed they were purchasing a product that had the same fiber content as various fruits or vegetables and that would provide certain "digestive support" and health benefits. In truth, the Gummies cannot provide the advertised benefits.

86. Plaintiff Kenkel and the class members did not receive the benefit of their bargain. They paid a price premium for products falsely marketed as having the same fiber content as various vegetables or fruits and as and that as providing certain "digestive support" and health benefits. The Gummies cannot deliver on the promises Church & Dwight makes.

87. Church & Dwight disseminated these false and misleading statements throughout New York, which were known, or should have been known through reasonable care, to be untrue and misleading to consumers, including Plaintiff Kenkel and the class members.

88. Plaintiff Kenkel and the class members have been injured by Church & Dwight's deceptive acts and practices, suffering an ascertainable loss by paying more for a product than they otherwise would have but for the false advertising.

89. Plaintiff Kenkel and the class members have no adequate remedy at law.

90. Church & Dwight's conduct has caused and continues to cause immediate and irreparable injury to Plaintiff Kenkel and the class members and will continue to mislead consumers unless enjoined by this Court.

91. Plaintiff Kenkel's claims are not preempted by federal law. As noted above, federal regulation affirmatively prohibits comparing the Gummies' fiber to the fiber content of other foods when the Gummies do not provide an "equivalent" source of fiber and federal statute affirmatively prohibits misleading claims that the Gummies provide "Fiber" for "Digestive Support."

## SECOND CAUSE OF ACTION

### Violations of New York Gen. Bus. Law § 350
### (On Behalf of Plaintiff Kenkel and the New York Class)

92. Plaintiff Kenkel incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

93. By reason of the acts set forth above, Church & Dwight has been and is engaged in

consumer-oriented advertising and marketing against Plaintiff Kenkel and class members located in New York, engaging in business conduct that is false and misleading in material respects, in violation of NY GBL § 350, which provides, in part, that "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful."

94. NY GBL § 350 applies to Plaintiff Kenkel and the New York Class because the State of New York has a strong interest in protecting its residents from false advertising and deceptive business practices by companies marketing consumer goods within the state.

95. Church & Dwight caused statements that were untrue or misleading, and which they knew to be untrue or misleading, to be disseminated throughout New York State and elsewhere, through advertising, marketing, and other publications.

96. Church & Dwight's misrepresentations were material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers were and continue to be exposed to Church & Dwight's material misrepresentations.

97. Plaintiff Kenkel and the class members have been injured by Church & Dwight's deceptive acts or practices.

98. Plaintiff Kenkel and the class members have no adequate remedy at law.

99. Church & Dwight's conduct has caused and is causing immediate and irreparable injury to Plaintiff Kenkel and the class members and will continue to damage both Plaintiff Kenkel and the class members and deceive the public unless enjoined by this Court.

100. Pursuant to NY GBL § 350-e, Plaintiff Kenkel and the class members seek monetary damages (including actual damages or $500, whichever is greater, and minimum, punitive, or treble and/or statutory damages pursuant to NY GBL § 350 a(1)), injunctive relief,

restitution, and disgorgement of all monies obtained by means of Church & Dwight's unlawful conduct, interest, and attorneys' fees and costs.

101. Church & Dwight's conduct has also substantially injured the public, as consumers across New York were exposed to and relied upon Church & Dwight's false advertising in deciding to purchase the Gummies. Plaintiff Kenkel and the class members reasonably relied on these representations and believed they were purchasing a product that had the same fiber content as various vegetables or fruits. However, regardless of which claim they saw, the Gummies cannot provide the advertised benefits.

102. Plaintiff Kenkel and the class members did not receive the benefit of their bargain. They paid a price premium for products falsely marketed as having the same fiber content as various vegetables or fruits and as providing certain "digestive support" and health benefits. The Gummies cannot deliver on the promises Church & Dwight makes.

103. The widespread deception not only caused financial harm to consumers but also promoted misleading information about the fiber content of Gummies marketed to children, peddling the false narratives that the Gummies could provide the same fiber as fruits and vegetables and could provide certain "digestive support" and health benefits.

104. Church & Dwight's conduct thus caused real-world harm and poses an ongoing risk of further injury if not enjoined.

105. Plaintiff Kenkel's claims are not preempted by federal law. As noted above, federal regulation affirmatively prohibits comparing the Gummies' fiber to the fiber content of other foods when the Gummies do not provide an "equivalent" source of fiber and federal statute affirmatively prohibits misleading claims that the Gummies provide "Fiber" for "Digestive Support."

## THIRD CAUSE OF ACTION

**Violations of Consumers Legal Remedies Act (the "CLRA")**
**California Civil Code § 1750, et seq.**
**(On Behalf of Plaintiff Ringler and the California Class)**

106. Plaintiff Ringler incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

107. Church & Dwight's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

108. Plaintiff and other California Subclass members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

109. The Gummies that Plaintiff (and other similarly situated California Subclass members) purchased from Church & Dwight were "goods" within the meaning of California Civil Code § 1761(a).

110. By engaging in the actions, representations, and conduct set forth in the Complaint, Church & Dwight has violated, and continues to violate, §§ 1770(a)(5), 1770(a)(7), and 1770(a)(9) of the CLRA.

111. In violation of § 1770(a)(5), Church & Dwight's acts and practices constitute improper representations that the goods it sells have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have.

112. In violation of § 1770(a)(7), Church & Dwight's acts, practices, and omissions constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another.

113. In violation of § 1770(a)(9), Church & Dwight has advertised goods or services with intent not to sell them as advertised.

114. Church & Dwight's acts, practices, and omissions, set forth above, led consumers to falsely believe that the Gummies are dietary supplements that provide the same amount of fiber as various vegetables or fruits and that provide certain "digestive support" and health benefits. In reality, the Gummies do not and cannot deliver the advertised benefits.

115. Plaintiff Ringler reasonably relied on Church & Dwight's representations and omissions. The representations and omissions were material because a reasonable consumer would consider both the fiber of the Gummies and their ability to provide certain "digestive support" and other health benefits important factors in deciding whether to purchase the products. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the products.

116. Church & Dwight's violations of the CLRA directly and proximately caused injury in fact and damages to Plaintiff Ringler and the California Subclass. Absent Church & Dwight's misrepresentations and omissions, Plaintiff would not have purchased the Gummies or would have paid substantially less for them.

117. Plaintiff Ringler, on behalf of herself and the California Subclass, demands judgment against Church & Dwight for actual damages, punitive damages, and attorney's fees and costs. On December 17, 2025, Plaintiff Ringler sent Church & Dwight a demand for corrective action pursuant to CLRA § 1782. Plaintiff received proof of delivery of this demand on December 22, 2025. On December 23, 2025, a representative from The Corporation Trust Company picked up and signed for the letter. Church & Dwight failed to take corrective action after thirty days.

118. Plaintiff Ringler seeks relief for violations of the CLRA in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared

to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution.

119. Plaintiff Ringler's claims are not preempted by federal law. As noted above, federal regulation affirmatively prohibits comparing the Gummies' fiber to the fiber content of other foods when the Gummies do not provide an "equivalent" source of fiber and federal statute affirmatively prohibits misleading claims that the Gummies provide "Fiber" for "Digestive Support."

**FOURTH CAUSE OF ACTION**

**Violations of California Unfair Competition Law ("UCL")**
**Cal. Bus. & Prof. Code §§ 17200, *et seq*.**
**(On Behalf of Plaintiff Ringler and the California Class)**

120. Plaintiff Ringler incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

121. California Business & Professions Code, sections 17200, *et seq.* (the "UCL") prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

122. Church & Dwight's false and misleading advertising claims regarding the Gummies violate all three prongs—unlawful, unfair, and fraudulent—of the UCL.

123. First, Church & Dwight's representations and omissions regarding the Gummies are unlawful because they are misleading to a reasonable consumer and violate the CLRA, FAL, and NY GBL, as alleged herein.

124. Second, Church & Dwight's conduct violates the "unfair" prong of the UCL because Church & Dwight's representations and omissions regarding the Gummies are illegal, immoral, unscrupulous, and substantially injurious to consumers, and the negative impact on consumers outweighs any reasons, justifications, or motives for Church & Dwight's conduct.

125. Third, Church & Dwight's conduct violates the "fraudulent" prong of the UCL because Church & Dwight's representations and omissions are likely to deceive members of the public.

126. Plaintiff Ringler reasonably relied on Church & Dwight's representations and omissions. The representations and omissions were material because a reasonable consumer would consider the fiber content of the Gummies and the Gummies' ability to provide certain "digestive support" and health benefits important factors in deciding whether to purchase the products. The representations and omissions were a substantial factor in Plaintiff's decision to purchase the products.

127. As a direct and proximate result of Church & Dwight's violations of the UCL, Plaintiff Ringler and the California Subclass have suffered injury in fact and have lost money. Plaintiff Ringler and the California Subclass paid an unwarranted premium for the Gummies and/or were denied the benefit of the bargain.

128. Absent Church & Dwight's misrepresentations and omissions, Plaintiff Ringler would not have purchased the Gummies or would have paid substantially less for them.

129. Plaintiff Ringler seeks relief for violations of the UCL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution.

130. Plaintiff Ringler's claims are not preempted by federal law. As noted above, federal regulation affirmatively prohibits comparing the Gummies' fiber to the fiber content of other foods when the Gummies do not provide an "equivalent" source of fiber and federal statute affirmatively

prohibits misleading claims that the Gummies provide “Fiber” for “Digestive Support.”

**FIFTH CAUSE OF ACTION**

**Violations of California False Advertising Law (“FAL”)**
**Cal. Bus. & Prof. Code §§ 17500, *et seq*.**
**(On Behalf of Plaintiff Ringler and the California Class)**

131. Plaintiff Ringler incorporates by reference all allegations in this Complaint and restates them as if fully set forth herein.

132. The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits “unfair, deceptive, untrue or misleading advertising[.]”

133. The FAL prohibits not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood, or tendency to deceive or confuse the public.

134. Church & Dwight violated section 17500 when it advertised and marketed the Gummies through the unfair, deceptive, and misleading representations and omissions disseminated to the public that the Gummies are dietary supplements that provide the same amount of fiber as various vegetables and fruits and that provide certain “digestive support” and health benefits. In reality, the Gummies do not and cannot deliver the advertised benefits.

135. Plaintiff Ringler reasonably relied on Church & Dwight’s representations and omissions. The representations and omissions were material because a reasonable consumer would consider the fiber content of the Gummies and the Gummies’ ability to provide certain “digestive support” and health benefits important factors in deciding whether to purchase the products. The representations and omissions were a substantial factor in Plaintiff’s decision to purchase the products.

136. As a direct and proximate result of Church & Dwight’s violations of the FAL, Plaintiff Ringler and the California Subclass have suffered injury in fact and have lost money.

Plaintiff and the California Subclass paid an unwarranted premium for the Gummies and/or were denied the benefit of the bargain.

137. Absent Church & Dwight's misrepresentations and omissions, Plaintiff Ringler would not have purchased the Gummies or would have paid substantially less for them.

138. Plaintiff Ringler seeks relief for violations of the FAL in the form of restitution, and/or disgorgement of ill-gotten gains to compensate and make whole Plaintiff and the California Subclass. Restitution is appropriate because it is more certain, prompt, and efficient as compared to damages. Further, to obtain a full refund as damages, Plaintiff would have to show that the products have no market value, whereas that showing is not required for restitution.

139. Plaintiff Ringler's claims are not preempted by federal law. As noted above, federal regulation affirmatively prohibits comparing the Gummies' fiber to the fiber content of other foods when the Gummies do not provide an "equivalent" source of fiber and federal statute affirmatively prohibits misleading claims that the Gummies provide "Fiber" for "Digestive Support."

**SIXTH CAUSE OF ACTION**

**Violations of the Consumer Protection Laws of 48 States and the District of Columbia (On Behalf of the Nationwide Class)**

140. Plaintiffs reallege and incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

141. Plaintiffs bring this claim on behalf of the Nationwide Class for violations of the consumer protection acts of each of the States of the United States, and the District of Columbia, other than New York and California.

142. Plaintiffs bring these statutory claims pursuant to the "Consumer Protection Laws" identified below, all of which were enacted and designed to protect consumers against unlawful, fraudulent, deceptive, and/or unfair business acts or practices and each of which are similar either

to the New York GBL §§ 349 & 350 or to the California UCL, FAL or CLRA.

143. The following consumer protection statutes are collectively referred to herein as the "Consumer Protection Laws":

a. ALA. CODE § 8-19-1 et seq. (Alabama);

b. ALASKA STAT. ANN. § 45.50.471 et seq. (Alaska);

c. ARIZ. REV. STAT. ANN. § 44-1521 et seq. (Arizona);

d. ARK. CODE ANN. § 4-88-101 et seq. (Arkansas);

e. COLO. REV. STAT. ANN. § 6-1-101 et seq. (Colorado);

f. CONN. GEN. STAT. ANN. § 42-110a et seq. (Connecticut);

g. DEL. CODE ANN. tit. 6, § 2511 et seq. (Delaware);

h. D.C. CODE ANN. § 28-3901 et seq. (District of Columbia);

i. FLA. STAT. ANN. § 501.201 et seq. (Florida);

j. GA. CODE ANN. § 10-1-370 et seq. (Georgia) and GA. CODE ANN. § 10-1-390 et seq. (Georgia);

k. HAW. REV. STAT. ANN. § 480-1 et seq. and HAW. REV. STAT. ANN. § 481A-1 et seq. (Hawaii);

l. IDAHO CODE ANN. § 48-601 et seq. (Idaho);

m. 815 ILCS 505/1 et seq. (Illinois);

n. IND. CODE ANN. § 24-5-0.5-0.1 et seq. (Indiana);

o. IOWA CODE § 714.16 et seq.

p. KAN. STAT. ANN. § 50-623 et seq. (Kansas);

q. KY. REV. STAT. ANN. § 367.110 et seq. (Kentucky);

r. LA. STAT. ANN. § 51:1401 et seq. (Louisiana);

s. ME. REV. STAT. tit. 5, § 205-A et seq. (Maine);

t. MD. CODE ANN., COM. LAW § 13-101 et seq. (Mary-land);

u. MASS. GEN. LAWS ANN. ch. 93A, § 1 et seq. (Massachusetts);

v. MICH. COMP. LAWS ANN. § 445.901 et seq. (Michigan);

w. MINN. STAT. ANN. § 325F.68 et seq., MINN. STAT. ANN. §325D.09 et seq., MINN. STAT. ANN. § 325D.43 et seq., and MINN. STAT. ANN. § 325F.67 (Minnesota);

x. MISS. CODE ANN. § 75-24-1 et seq. (Mississippi);

y. MO. ANN. STAT. § 407.010 et seq. (Missouri);

z. MONT. CODE ANN. § 30-14-101 et seq. (Montana);

aa. NEB. REV. STAT. ANN. § 59-1601 et seq. (Nebraska);

bb. NEV. REV. STAT. ANN. § 41.600 and NEV. REV. STAT. ANN. §598.0903 et seq. (Nevada);

cc. N.H. REV. STAT. ANN. § 358-A:1 et seq. (New Hampshire);

dd. N.J. STAT. ANN. § 56:8-1 et seq. (New Jersey);

ee. N.M. STAT. ANN. § 57-12-1 et seq. (New Mexico);

ff. N.C. GEN. STAT. ANN. § 75-1 et seq. (North Carolina);

gg. N.D. CENT. CODE ANN. § 51-15-01 et seq. (North Dakota);

hh. OHIO REV. CODE ANN. § 1345.01 et seq. (Ohio);

ii. OKLA. STAT. ANN. tit. 15, § 751 et seq. (Oklahoma);

jj. OR. REV. STAT. ANN. § 646.605 et seq. (Oregon);

kk. 73 PA. STAT. ANN. § 201-1 et seq. (Pennsylvania);

ll. 6 R.I. GEN. LAWS ANN. § 6-13.1-1 et seq. (Rhode Island);

mm. S.C. CODE ANN. § 39-5-10 et seq. (South Carolina);

nn. S.D. CODIFIED LAWS § 37-24-1 et seq. (South Dakota);

oo. TENN. CODE ANN. § 47-18-101 et seq. (Tennessee);

pp. TEX. BUS. & COM. CODE ANN. § 17.41 et seq. (Texas);

qq. UTAH CODE ANN. § 13-11-1 et seq. (Utah);

rr. VT. STAT. ANN. tit. 9, § 2451 et seq. (Vermont);

ss. VA. CODE ANN. § 59.1-196 et seq. (Virginia);

tt. WASH. REV. CODE ANN. § 19.86.010 et seq. (Washington);

uu. W.VA. CODE ANN. § 46A-6-101 et seq. (West Virginia);

vv. WIS. STAT. ANN. § 100.20 (Wisconsin); and

ww. WYO. STAT. ANN. § 40-12-101 et seq. (Wyoming).

144. Plaintiffs and members of the Nationwide Class have standing to assert claims under the Consumer Protection Laws because they are consumers within the meaning of the Consumer Protection Laws and Church & Dwight's practices were addressed to the market generally and to each state's domestic market and otherwise implicate consumer protection concerns.

145. Church & Dwight has engaged in and continues to engage in unfair, unlawful, deceptive and fraudulent trade practices as outline in this Complaint.

146. Church & Dwight's acts, practices, and omissions, set forth above, led consumers to falsely believe that the Gummies are dietary supplements that provide the same amount of fiber as various vegetables or fruits and that provide certain "digestive support" and health benefits. In reality, the Gummies do not and cannot deliver the advertised benefits.

147. Church & Dwight intended for Plaintiffs and members of the Nationwide Class to

rely on their unlawful, fraudulent, deceptive and/or unfair business acts and practices.

148. Plaintiffs and those similarly situated relied, to their detriment, on Church & Dwight's unlawful, fraudulent, deceptive and/or unfair business acts and practices. Had they been adequately informed and not deceived by Church & Dwight, they would have acted differently by not purchasing the Gummies or by paying less for them.

149. Church & Dwight's acts and omissions are likely to similarly deceive the general public.

150. Church & Dwight's acts and omissions, where were knowing, willful, and wanton, constitute intentional violations of the Consumer Protection Laws.

151. Church & Dwight engaged in these acts and omissions to increase their profits.

152. Accordingly, Church & Dwight engaged in unlawful, fraudulent, deceptive and/or unfair practices within the meaning of each of the Consumer Protection Laws.

153. These practices also constitute unlawful competition and provide an unlawful advantage over Church & Dwight's competitors as well as injury to the general public.

154. Plaintiffs seek, on behalf of the Nationwide Class, actual, compensatory and punitive damages, as available under each respective statute, to restore any and all monies acquired by Church & Dwight from the Nationwide Class through unlawful, fraudulent, deceptive and/or unfair means, plus interest thereon. Plaintiffs also seek to recover attorneys' fees, costs and expenses to be asserted against Church & Dwight, within the limits of applicable law.

155. Plaintiffs also seek, on behalf of the Nationwide Class, an injunction to prohibit Church & Dwight from continuing to engage in the aforementioned acts and omissions.

156. Plaintiffs also seek, on behalf of the Nationwide Class, a declaration that Church & Dwight's acts and omissions are unlawful, fraudulent, deceptive and/or unfair within the meaning

of the Consumer Protection Laws.

157. As a direct and proximate result of Church & Dwight's acts and omissions, Plaintiffs and the Nationwide Class have suffered and continue to suffer injury in fact and have lost money or property as a result.

158. As a direct and proximate result of Church & Dwight's acts and omissions, the company has enjoyed, and continues to enjoy, significant financial gain in an amount to be proven at trial.

159. Plaintiffs' claims on behalf of the Nationwide Class are not preempted by federal law. As noted above, federal regulation affirmatively prohibits comparing the Gummies' fiber to the fiber content of other foods when the Gummies do not provide an "equivalent" source of fiber and federal statute affirmatively prohibits misleading claims that the Gummies provide "Fiber" for "Digestive Support."

## SEVENTH CAUSE OF ACTION

### Unjust Enrichment
### (On Behalf of Plaintiffs and All Classes)

160. Plaintiffs incorporate by reference all allegations in this Complaint and restate them as if fully set forth herein.

161. Plaintiffs and the Classes conferred a benefit on Church & Dwight in the form of payments for the Gummies.

162. Church & Dwight accepted and retained these payments, even though it misrepresented the efficacy of the Gummies.

163. It would be unfair for Church & Dwight to keep the money spent without compensating Plaintiffs and the Classes because Church & Dwight misled consumers into believing the Gummies contained as much fiber as certain amounts of vegetables and fruits, when

in fact they do not, and that the Gummies would provide certain "digestive support" and health benefits, when in fact they cannot.

164. Church & Dwight's conduct has therefore caused and is causing immediate and irreparable injury to Plaintiffs and the class members and will continue to both damage Plaintiffs and the class members and deceive the public unless enjoined by this Court.

165. Plaintiffs' claims are not preempted by federal law. As noted above, federal regulation affirmatively prohibits comparing the Gummies' fiber to the fiber content of other foods when the Gummies do not provide an "equivalent" source of fiber and federal statute affirmatively prohibits misleading claims that the Gummies provide "Fiber" for "Digestive Support."

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Classes, pray for relief and judgment against Church & Dwight as follows:

A. certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiffs as representatives of the Classes, and designating Plaintiffs' counsel as Class Counsel;

B. awarding Plaintiffs and the Classes compensatory damages and actual damages, trebled, in an amount exceeding $5,000,000, to be determined by proof;

C. awarding Plaintiffs and the Classes appropriate relief, including actual and statutory damages;

D. awarding Plaintiffs and the Classes exemplary and punitive damages;

E. awarding Plaintiffs and the Classes civil penalties;

F. granting Plaintiffs and the Classes declaratory and equitable relief, including restitution and disgorgement;

G. enjoining Church & Dwight from continuing to engage in the wrongful acts and practices alleged herein;

H. awarding Plaintiffs and the Classes the costs of prosecuting this action, including expert witness fees;

I. awarding Plaintiffs and the Classes reasonable attorneys' fees and costs as allowable by law;

J. awarding pre-judgment and post-judgment interest; and

K. granting any other relief as this Court may deem just and proper.

**JURY TRIAL DEMANDED**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: February 17, 2026

Respectfully submitted,

By: *<u>/s/ Raphael Janove</u>*
Raphael Janove
Max Ian Fiest
**JANOVE PLLC**
500 7th Ave., 8th Floor
New York, NY 10018
(646) 347-3940
raphael@janove.law
max@janove.law